NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**IN RE MAGNOLIA MEDICAL TECHNOLOGIES, INC.,**
*Appellant*

———————————

2025-1961

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 90/019,177.

———————————

Decided:  July 9, 2026

———————————

FREDERIC MEEKER, Banner & Witcoff, Ltd., Washington, DC, for appellant.  Also represented by SIMON C. LASKER, PAUL T. QUALEY.

KAKOLI CAPRIHAN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee John A. Squires.  Also represented by JUSTIN BOVA, NICHOLAS THEODORE MATICH, IV, AUSTIN PHILIP MAYRON.

———————————

2            IN RE MAGNOLIA MEDICAL TECHNOLOGIES, INC.

Before LOURIE and PROST, *Circuit Judges*, and
SUBRAMANIAN, *District Judge*.[1]

PER CURIAM.

Magnolia Medical Technologies, Inc. ("Magnolia") appeals from a decision of the Patent Trial and Appeal Board ("the Board") in an *ex parte* reexamination affirming an examiner's rejection of claim 1 of U.S. Patent 10,039,483 ("the '483 patent") as anticipated and therefore unpatentable. *Ex Parte Magnolia Med. Techs., Inc.*, No. 2025-001039, 2025 WL 1528341 (P.T.A.B. May 20, 2025) ("*Decision*"). We *affirm*.

BACKGROUND

The '483 patent is directed to a device for procuring blood samples "with reduced contamination from microbes exterior to the [blood] source, such as dermally-residing microbes." '483 patent col. 2. ll. 14–16.  The device aims to reduce such contamination "[b]y separating and excluding the initial portion of blood collected" from the sample used for testing. *Magnolia Med. Techs., Inc. v. Kurin, Inc.*, 169 F.4th 1094, 1098 (Fed. Cir. 2026) (citing '483 patent col. 3 ll. 25–29).

Independent claim 1 is the only claim on appeal, and reads as follows:

1. A blood sequestration device, comprising:

> a housing having an inlet port configured to be fluidically coupled to a patient and an outlet port configured to be fluidically coupled to a sample reservoir;

---

[1]    Honorable Arun Subramanian, District Judge, United States District Court for the Southern District of New York, sitting by designation.

> a fluid reservoir disposed in the housing and at least partially defined by a seal member, *the fluid reservoir configured to receive an initial volume of blood withdrawn from the patient*; and
>
> a vent disposed in the housing and configured to allow air to exit the housing as blood enters the fluid reservoir,
>
> the blood sequestration device configured to allow the initial volume of blood to flow from the inlet port to the fluid reservoir,
>
> the blood sequestration device further configured to allow *a subsequent volume of blood to flow from the inlet port toward the outlet port via a sampling flow path, thereby bypassing the fluid reservoir and the initial volume of blood sequestered therein.*

'483 patent col. 20 ll. 48–65 (emphases added).

The two disputed limitations are: (1) "a . . . fluid reservoir configured to receive an initial volume of blood withdrawn from the patient" (the "fluid reservoir limitation"), *id.* col. 20 ll. 52–55, and (2) "a subsequent volume of blood . . . bypass[es] the fluid reservoir and the initial volume of blood sequestered therein" (the "bypass limitation"). *Id.* col. 20 ll. 62–65.

A third party requested *ex parte* reexamination based on U.S. Patent 6,013,037 ("Brannon"), which discloses "a syringe for collecting multiple samples of blood for laboratory testing that substantially minimizes contamination of and/or hemolysis [(the destruction of red blood cells)] in the samples." Brannon col. 1 ll. 12–14.

Reexamination was granted and an Examiner rejected claim 1 as anticipated by Brannon.  J.A. 19654–55.  Magnolia appealed to the Board, which affirmed the Examiner's rejection.  *Decision* at *3–8.

Magnolia timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

### DISCUSSION

"Under 35 U.S.C. § 102 a claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference." *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010) (citation omitted).  "Anticipation is a question of fact we review for substantial evidence." *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co. Ltd*, 851 F.3d 1270, 1273 (Fed. Cir. 2017).  "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938) (citation omitted).

The Board affirmed the Examiner's findings that Brannon discloses both the fluid reservoir and bypass limitations.  Those findings are consistent with Brannon and are therefore supported by substantial evidence.  Brannon discloses that "a . . . first [blood] sample is contained within the fluid chamber 30," Brannon col. 12 ll. 45–46, tracking claim 1's fluid reservoir limitation, which requires a part of the device to be "configured to receive an initial volume of blood withdrawn from the patient." '483 patent col. 20 ll. 52–55.  Brannon also discloses that "fluid chamber 30 may be substantially separated from the second and any subsequent samples drawn," Brannon col. 12 ll. 55–57, tracking the bypass limitation, which requires a later volume of blood collected to "bypass[] the fluid reservoir and the initial volume of blood sequestered therein." '483 patent col. 20 ll. 64–65.

Magnolia's arguments on appeal are unpersuasive. Magnolia first argues that the Board's finding that fluid chamber 30 meets the fluid reservoir limitation is unsupported by substantial evidence. Magnolia's argument is built upon multiple premises. Magnolia first asserts that the phrase "initial volume of blood" as used in the fluid reservoir limitation should be construed to mean "the first volume of blood after venipuncture," *i.e.*, the insertion of a needle into the vein. *See* Open. Br. 15. Magnolia then contends that Brannon's fluid chamber 30 must be configured to be devoid of any air at the time of venipuncture to avoid the safety risk of introducing an air embolism into the patient. Open. Br. 16 (citing J.A. 37001–02, ¶¶ 31–32 (expert declaration)). Accordingly, Magnolia asserts that the required configuration of fluid chamber 30 cannot meet the "an initial volume of blood from the patient" requirement of the reservoir limitation because it does not contain blood at the time of venipuncture. *See* Open. Br. 14–21; '483 patent col. 20 ll. 52–55.

That argument is unconvincing because nothing in the text of claim 1 requires that the fluid reservoir limitation must be met at the time of venipuncture. Whether or not fluid chamber 30 meets the fluid reservoir limitation at the time of venipuncture thus does not affect the anticipation analysis. *See Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2008) (anticipation requires the "reference to show all of the limitations of the claims arranged or combined in the same way as recited in the claims"). And the Board reasonably found Magnolia's purported safety concerns with the Brannon device to be unsupported, because an embodiment of the *'483 patent itself* operates in a materially similar manner. *Decision* at *5 ("[T]he Examiner takes the position that [Brannon] is no more dangerous than [Magnolia's] device considering that . . . the '483 patent . . . is in a configuration having a fluid reservoir [] which would have air therein.") (citing J.A. 37059; '483 patent Fig. 8). Multiple premises upon which

Magnolia's argument are unsound, and thus the argument fails.

Separately, Magnolia argues that Brannon does not meet the bypass limitation because Brannon discloses "how an initial flash" of blood from the first volume collected flows into the sample collected for testing. Open. Br. 20 (citing Brannon col. 7 ll. 14–18). Magnolia therefore contends that Brannon does not disclose "the initial volume of blood sequestered" in the fluid reservoir. '483 patent col. 20 ll. 64–65.

We are again unconvinced. The bypass limitation only requires "the initial volume of blood [to be] sequestered," which refers back to the antecedent fluid reservoir limitation, which states: "an initial volume of blood withdrawn from the patient." '483 patent col.20 ll. 52–55, 62–65; *see ABS Glob., Inc. v. Cytonome/St, LLC*, 84 F.4th 1034, 1040 (Fed. Cir. 2023) (explaining the antecedent rule of construction). But the fluid reservoir limitation does not require that the *full amount* of initially collected blood must be sequestered in the fluid reservoir, just that "*an* initial volume of blood" must be sequestered. *See* '483 patent col. 20 ll. 52–55 (emphasis added). It is therefore immaterial that some of the initial portion of blood in Brannon ultimately ends up in the sample collected and tested.

### CONCLUSION

We have considered Magnolia's other arguments but find them unpersuasive. For the reasons provided, we *affirm*. Claim 1 is invalid.

**AFFIRMED**